PERGAMUS G. AMES, Complainant, Appellee,

*vs.*

IRA L. AMES et ux., Defendants, Appellants.

APPEAL IN EQUITY FROM DANE CIRCUIT COURT.

In a bill of foreclosure, when the condition of the mortgage is attempted to be set out, it must be set out correctly.

A material variance between the condition of the mortgage set out in the bill, and that offered in evidence, is fatal.

The condition of the mortgage described in the bill was for the payment of $130.72, and interest according to the tenor and effect of a certain note described, and the mortgage offered in evidence was conditioned, not only for the payment of the note, but also to secure the payment of seven dollars annually to the mortgagees, during their respective lives: Held, that the variance was material, and that the mortgage offered in evidence was inadmissible under the averments in the bill.

When a variance has occurred through mistake in the description of a mortgage in a bill of foreclosure, so as to preclude the introduction of the mortgage in evidence, the bill may be amended on terms.

As to payment, satisfaction, substitution or discharge, see case.

ON the 31st day of August, A. D. 1854, Pergamus G. Ames filed his bill of foreclosure against the defendants, Ira L. Ames and wife, setting forth that on the 6th day of March, 1849, Ira L. Ames, of the town of Oregon, in the county of Dane, made his promissory note to Nathaniel Ames, of said county, and thereby, for value received, promised to pay said Nathaniel Ames, or order, $130.75, in four installments, one quarter at the end of one year, and one quarter to be paid at the end of each year after, until all should be paid, with interest annually. The bill also alleged that a mortgage was executed to secure the said note, and described the same as follows :

"And the said Ira L. Ames, and Sarah A. Ames, his wife, to secure the payment of the principal and interest mentioned in the said note, did at the same time execute under their hands and seals, and deliver to your orator, a mortgage bearing even date with the said note, and conditioned for the payment of

the said sum of one hundred and thirty and 72-100 dollars, with interest thereon according to the condition of the said note, by which the said mortgagors mortgaged unto the said Nathaniel Ames, in fee, certain lands and real estate."*    *    *    *    *  ·  "That the said note and mortgage had been duly assigned," &c.

The bill set forth that the note and mortgage had been duly assigned to the complainant; that the whole amount was then due, and unpaid; and that no proceedings at law had been had, &c.

The defendants answered jointly, admitting the note and mortgage, and the delivery of the same to Nathaniel Ames, but denied all knowledge of the assignment, and demanded proof.

The defendants further answering allege, that before the assignment of the note and mortgage, if the same were ever assigned, or before they had any notice of such assignment, the said note and mortgage were fully paid and satisfied, and deny that the sum of $130.72 and interest, or any part thereof, remains due and unpaid. These answers were put in under oath, to which a general replication was filed. The cause was brought to hearing at the November term, 1855, when the complainant introduced the note described in the bill. The complainant then offered to read in evidence a mortgage, conditioned as follows :

" Provided always, and these presents are upon condition, if the said Ira L. Ames and Sarah Ann Ames, their heirs, executors, administrators or assigns, shall well and truly pay, or cause to be paid to the said party of the second part (viz : Nathaniel Ames and Sarah Ames), the sum of seven dollars annually, from this date, during the natural lives of the said Nathaniel and Sarah Ames, and the longest liver of them ; and pay a certain note of this date, for one hundred and thirty dollars and seventy-two cents, payable by installments, with interest annually, agreeably to the tenor of said note, then the above deed to be void, otherwise to remain in full force and virtue."

On a leaf of the mortgage was an assignment from Nathaniel Ames to the complainant, but none from Sarah Ames ; nor did it appear in evidence that she had deceased. To the reading of

this mortgage in evidence the defendants objected, but the objection was overruled and the evidence admitted. 

On the part of the defendants, witnesses were called and examined to prove that the mortgage mentioned in the bill, had been satisfied by the substitution of another in lieu thereof, executed by one Wessells, who had purchased the premises of Ira. Wessells testified that it was agreed to give Nathaniel a mortgage to cancel the old one, which he agreed to take; that he executed a mortgage to Nathaniel for four hundred and thirteen dollars, and two notes secured by the same, one for two hundred, and one for two hundred and thirteen dollars. The witness understood that this mortgage was to cancel all the mortgages which Nathaniel held upon the premises prior to his purchase of Ira, he also gave a mortgage to Ira L. for four hundred dollars upon the same premises. The mortgage executed by the witness was not recorded when examined by Nathaniel Ames, but was examined by him.

The counsel for the defendants also introduced in evidence the deposition of Harvey E. Frink, who therein testified, that he was an attorney at law and solicitor in chancery, and drew the answer of the defendants to the bill of complaint; that some time about the 1st of January, A. D. 1854, the defendant Ira L. Ames called at his office, and said, in substance, that he was negotiating a sale of his farm in the town of Oregon, to Owen Wessells; that the only trouble there was about it was, that his, defendant's father, Nathaniel Ames, had two mortgages upon it, one of which was then due; that he, Ira, was desirous to sell it, and that Wessells wanted to buy it, but would not do so subject to the mortgages in question, viz: the two mortgages to his father, Nathaniel Ames; that he had agreed to meet Wessells the next day, at the house of his father, for the purpose of making some arrangement with him to pay off the said mortgages by giving new ones, or in some other way which would be satisfactory to all; that the defendant desired the professional services of the witness in the matter, and wished him to go with him the next day to make out the papers which might be necessary in perfecting the arrangement. The next day witness proceeded with

defendant to his father's house, and on their way there fell in with Wessells.

This witness testified that it was agreed between the parties, Ira Ames, Nathaniel Ames and Wessells, that the latter should have the farm for $1,000, and that he should make his two promissory notes, one for $213.13, and one for $200, payable to the order of Nathaniel Ames, three years from the first of March 1854, with interest, payable annually, at the rate of ten per cent. per annum, until the principal should be paid (copies of which notes were made exhibits); and which were to be secured by mortgage from said Wessells and wife to the said Nathaniel; and also one small note of $4 or $5 for interest; which were to be in full satisfaction and payment for the old mortgage now sought to be foreclosed. Wessells made the note, as agreed upon by the parties, and to secure the payment thereof, Wessells and wife executed the mortgage (annexed) to Nathaniel Ames, who directed the witness to have the same acknowledged and recorded, and sent to him, which the witness had done. The mortgage was executed that day at the house of Nathaniel Ames, but was not acknowledged by Wessells and wife until the next day, for several reasons. The defendant Ames (Ira) could not then make the deed to Wessells, because his wife was in Madison, and could not sign and acknowledge it. Besides, there was no officer near there, competent to take the acknowledgment of such instruments, and it was quite late in the afternoon when the parties agreed to the arrangement, and Wessells was unwilling to perfect the mortgage to Nathaniel Ames, until he had procured his deed from the defendants. The next day, the defendants made, executed and delivered their deed, duly acknowledged, to Wessells, who was to take immediate possession. On receiving the deed, Wessells and wife acknowledged the mortgage given to secure the notes aforesaid, and delivered it to the witness, for the said Nathaniel Ames, according to the agreement of the parties. Witness sent the mortgage to the register's office to be recorded, and after it was recorded sent the notes and mortgage to Nathaniel Ames, who received them. This was done by the witness at the request of Nathaniel Ames.

The notes secured by the mortgage and the small note were given by Wessells to Nathaniel Ames in full payment and discharge of the old mortgage on which these suits have been brought.(1) Wessells made the notes as agreed upon by the parties, and to secure the payment thereof, the said Wessells and wife made and executed the mortgage aforesaid to the said Nathaniel, who directed the witness to have the same acknowledged and recorded, and sent to him, which was accordingly done. "The notes secured by the mortgage (and a small note for interest) were given by Wessells to Nathaniel Ames in full payment and discharge of the old mortgages on which this and another suit is brought, and were a part of the consideration paid by Wessells for the land. Wessells absolutely refused to purchase the farm of the defendant Ira L., subject to those old mortgages, and the trade between Wessells and the defendant was once well nigh broken up, because the old gentleman, Nathaniel, wanted the mortgage then due paid, or a portion of it. Wessells refused to pay it, insisting upon more time, and the arrangement was finally entered into by all the parties."

The witness was counsel for Ira L. Ames in the matter of the trade, and also attended to the making of the mortgages and notes in Madison for Nathaniel. Some time after the witness had sent the recorded mortgage of Wessells to Nathaniel, the latter told witness that he would not discharge the old mortgages. He objected to the new one because it was not placed on record prior to the mortgage given by Wessells to Ira L. Ames. Witness was present when Nathaniel assigned the new mortgage to Ira L. Witness knew nothing about Nathaniel's accepting the new mortgage, further than above stated. He knew that he sent the new mortgage to him by somebody, and believed by Ira L. Ames. The defendant Ira L. afterwards assigned the new mortgage, which Nathaniel assigned to him, to Charles Armstrong.

The defendants here rested, and to rebut the evidence produced on the defence, the complainant produced John W. Ames,

(1) There is another suit to which this has reference, next to be noticed.

who testified that Ira L. Ames and Mr. Frink (the witness before named) came together to the house of Nathaniel Ames, and asked Nathaniel to give up the two old mortgages, and that he refused to give them up or cancel them, for the reason, as he said, that it was lessening his security, as it was placing his mortgage behind that given by Wessells to Ira. Frink told Nathaniel that he should be obliged to file a bill in chancery and compel him to give up the old mortgage. He said he was counsel for Ira. Mr. Frink stated to the old gentleman (Nathaniel) that they had got this mortgage recorded against Ira, and they wanted to get the new mortgage off the record, and proposed if he, Nathaniel, would assign the new mortgage they would take it off the record and there would be no further trouble about it, and agreed that the old mortgage should remain in full force and effect. Nathaniel refused to have anything to do with the new mortgage of Wessells if it would affect his old mortgages, and being so assured, he agreed to assign the new mortgage upon the express understanding that the assignment would not affect the old mortgages in any manner, and that the new mortgage would be discharged of record. With this understanding he assigned the new mortgage to Ira. Nathaniel never accepted the Wessells mortgage in place of the old ones executed by the defendants to Nathaniel. To induce Nathaniel to assign the Wessells mortgage the defendant stated that it was made out and placed upon record with the expectation that it would be accepted in lieu of the old ones. Nathaniel objected to it, as Ira's mortgage was given the preference; and to enable Ira to discharge it of record, Nathaniel assigned it.

The foregoing is the substance of this witness's testimony, the whole of which was objected to as offered, but the objection was overruled.

Upon this evidence the Circuit Court decreed a sale of the mortgaged premises, for the amount found to be due ($190.19), in the usual form; from which the defendants appealed.

*Knowlton, Knapp & Frink,* for the appellants.

*Smith & Keyes,* for the appellee.

*By the Court*, COLE J.   We are of the opinion that the Circuit Court erred in admitting the mortgage to be read in evidence under the averments in the bill.   There was a fatal variance between the mortgage described in the bill, and the one offered in proof.   The bill states that the mortgage was conditioned for the payment of the sum of $130.72, and interest, according to the note described in the mortgage, while the mortgage offered in evidence was conditioned for the payment, not only of this note, but also to secure the payment of $7, annually, to the mortgagees, Nathaniel Ames and Sarah Ames, or the survivor for life.   The objection seems well taken that this was not the mortgage described in the bill, but quite a different instrument. For if it is essential to mention at all in the bill the condition of the mortgage, it is equally essential that it should be correctly described.   Suppose the complainant had offered to read in support of this averment a mortgage conditioned not only to secure the payment of the note in his bill set forth, but of half a dozen other notes, or bonds, would such a mortgage have been admissible under this averment?   The averment is descriptive of the mortgage, and should correspond with it.   The bill, therefore, must be amended in that particular.

The other objections to the admission of the mortgage, in evidence, on the ground of variance, are not well taken.   Although there is an evident mistake in stating in the bill that the mortgage was executed and delivered to the complainant, whereas it appeared that it was executed to Nathaniel and Sarah Ames; yet this defect is cured by a subsequent averment that the note and mortgage had been duly assigned to the complainant.

It is insisted that the assignment is defective, not having been signed by Sarah Ames.   By the condition of the mortgage the annuity of $7 was to be paid to Nathaniel and Sarah Ames for life, or to the survivor of them.   Whether or not the interest of Sarah in this annuity was a chose in action, under the dominion and control of her husband, which he might sell and assign as he thought proper, we do not feel called upon to decide.   The decree, we think, must be reversed for the reason already sug-

gested. We might perhaps stop here, but we deem it proper briefly to state our views upon the merits of the defence set up to this suit.

It is contended that the note and mortgage have been paid and satisfied, by other notes, and a mortgage given by Wessells upon purchasing the mortgaged property. There is considerable testimony taken upon this point in the case. I do not propose entering upon an examination of this testimony, but shall content myself in stating the conclusions to which we have arrived upon it.

It appears that Owen Wessells, in January, 1854, entered into negotiations with the appellant, Ira L. Ames, about buying the latter's farm. At the time there were two mortgages upon the farm in favor of Ira's father, Nathaniel Ames. This suit is instituted to foreclose one of those mortgages. Wessells was unwilling to buy the farm, unless an arrangement could be made by which the two mortgages could be given up, and discharged, and a new mortgage given by him to Nathaniel. So he and Ira saw Nathaniel, and induced him to agree to make that arrangement. The sale being made by Ira to Wessells, the latter made and executed three promissory notes, for certain amounts, in favor of Nathaniel Ames; two of them secured by a mortgage. Nathaniel was not present in Madison when the notes were made, and mortgage executed and acknowledged. The notes and mortgage were given to Mr. Frink, who had the mortgage recorded, and then sent the same, with the notes, by Ira to Nathaniel. But Nathaniel refused to receive the mortgage and notes, insisting that the mortgage had not been made out and recorded, according to the previous understanding. And we are clearly of the opinion that he never did receive the notes and mortgage given by Wessells in lieu of, and in satisfaction of the two old mortgages. Had the matter been consummated by Nathaniel's receiving the new notes and mortgage in full discharge and satisfaction of the old ones, there would perhaps have been plausibility, if not merit, in the defence. But he did no such thing, and the present mortgage is still subsisting, unsatisfied and unpaid.

It has been contended that Nathaniel Ames constituted Mr. Frink his agent to receive from Wessells the new notes and mortgage, and consummate the arrangement, and that he is now bound by his acts. Mr. Frink went down to Nathaniel's house as the agent or attorney of Ira. He says that he went there for the purpose of making some arrangement with Nathaniel and Wessells to pay off the old mortgages by giving new ones. But the arrangement agreed upon was not, and could not be perfected at that time. It was to be done at Madison, some distance from Nathaniel's house. Nathaniel requested Mr. Frink to see that all was done right, have the new mortgage recorded and sent to him, with the notes. *Then he was to cancel the old mortgages;* that is, when he received and accepted the new one. He reserved to himself the right and power of accepting them or not, in discharge of those he already held. We do not think he gave Mr. Frink any authority to bind him to the extent claimed.

The decree of the Circuit Court must be reversed, and the cause remanded for further proceedings according to law.